United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARCO SACCHI,<br>Petitioner,<br>v.<br>KLODJANA DERVISHI,<br>Respondent. | Case No. 19-cv-06638-SK<br><br>**ORDER GRANTING PETITION** |

Before the Court is the petition filed by Petitioner Marco Sacchi ("Sacchi") for the return of his two minor children R.S. and A.S. to Italy pursuant to the Hague Convention on the Civil Aspects of International Child Abduction, Oct. 25, 1980, 19 I.L.M. 1501 ("Convention"), as implemented by the International Child Abduction Remedies Act ("ICARA"), codified at 22 U.S.C. §§ 9001, *et seq.* (Dkt. No. 1.)

The Court has considered all of the evidence submitted during the bench trial, including the testimony by Sacchi, Respondent Klodjana Dervishi ("Dervishi"), and expert witness S. Margaret Lee, Ph.D. Having considered the evidence carefully, the Court now finds that R.S and A.S were at the time of the alleged wrongful retention and now remain habitual residents of the Italy, and GRANTS the Petition for their return.

**FINDINGS OF FACT**

The parties stipulated to many facts (Dkt. 45), which are cited as "Undisputed Fact." All other references are to the trial transcript ("Tr.") or exhibits from trial ("Trial Ex.").

Sacchi was born and raised in Italy and is currently a resident and citizen of Italy. (Dkt. 45 (Undisputed Fact No. 1).) Dervishi, was born and raised in Albania and is currently a resident of California, in the United States of America. (Dkt. 45 (Undisputed Fact No. 2).) On October 13, 2006, Sacchi and Dervishi married in Italy and remained living together in Italy until 2008. (Dkt.

United States District Court
Northern District of California

45 (Undisputed Fact No. 3).)

In 2008, Sacchi and Dervishi moved from Italy to California. (Dkt. 45 (Undisputed Fact No. 4).) They resided together in California from 2008 until July 15, 2016. (Dkt. 45 (Undisputed Fact No. 5).) The parties have two children, namely, RS, a son, born in 2009, and now age 10, and AS, a daughter, born in 2011, and now age 8. (Dkt. 45 (Undisputed Fact No. 5).) The children were both born in California. (Dkt. 45 (Undisputed Fact No. 5).)

**A. Move from California to Italy.**

On July 15, 2016, the family moved back to Italy. (Dkt. 45 (Undisputed Fact No. 6).) The parties became United States citizens before they left for Italy. (Dkt. 45 (Undisputed Fact No. 7).) The applications for citizenship were started almost a year before. (Dkt. 45 (Undisputed Fact No. 7).)

Before moving back, Sacchi undertook extensive remodeling of the Milan apartment to increase the size of the children's room. (Dkt. 45 (Undisputed Fact No. 9).) Sacchi resigned from his job in California and had a new job in Italy waiting for him. (Dkt. 45 (Undisputed Fact No. 10).)

The parties moved most of their possessions back to Italy – including furniture, clothing, art, and rugs. (Dkt. 45 (Undisputed Fact No. 8).) Their possessions filled a huge shipping container – in all there were 282 items, totaling 8708 pounds, or 1236 cubic feet. (Dkt. 45 (Undisputed Fact No. 8).)

Before the move back to Italy, Dervishi worked part-time at a photography business in California. (Dkt. 45 (Undisputed Fact No. 11).) When the parties moved to Italy, she shipped all of her photography equipment back to Italy. (Dkt. 45 (Undisputed Fact No. 11).)

The parties gave up the lease on their residence in San Leandro, California. (Dkt. 45 (Undisputed Fact No. 12).) Sacchi gave up his car lease. (Dkt. 45 (Undisputed Fact No. 13).) Dervishi gave up her car lease April 2017, when it ended. (Dkt. 45 (Undisputed Fact No. 13).)

Sacchi gave up his credit cards and California driver's license. (Dkt. 45 (Undisputed Fact No. 14).) Most of Dervishi's credit cards were cancelled as well. (Dkt. 45 (Undisputed Fact No. 14).) The parties gave up their bank accounts except for a joint one that was kept open. (Dkt. 45

United States District Court
Northern District of California

(Undisputed Fact No. 14).) Dervishi used this account when she visited California. (Dkt. 45 (Undisputed Fact No. 14).) Dervishi also kept open her photography business account. (Dkt. 45 (Undisputed Fact No. 14).)

**B. Initial Life in Italy in 2016.**

Both parties moved back to Italy with the children and continued to live together in Milan in the same apartment with the children for the next two and a half years until Dervishi returned to California. (Dkt. 45 (Undisputed Fact No. 15).)

**C. Children's Life in Italy.**

The children's fluency in Italian improved greatly to the point that they are equally fluent in Italian and English. (Dkt. 45 (Undisputed Fact No. 16).)

The children had good teachers in Italy and flourished academically. (Tr. 267: 17-21.) The children both had some initial difficulty adjusting to Italy, but after that initial period, they were well settled in school, liked it, and were getting very good grades. (Tr. 51:1-2.) RS had the most trouble, but, after a couple of months, he adapted. (Tr. 51:11-24; Tr. 52:3-6.) The children's grades were good. For example, on a grading scale of 1 to 10, AS received scores of 9's and 10's in first grade. (Tr. 52:15-53:4; Trial Ex. 2). In second grade, AS continued, receiving 9's and 10's. (Tr. 54:4-12; Trial Ex. 3). The comments on AS's second grade report card indicated that she had no problems making friends, interacted appropriately, had good observation and analysis, and showed good progression. (Tr. 55:25-56:15; Trial Ex. 3.) In his first school year in Italy, RS received scores of 8's and 9's and one 7 the first quarter. However, in the second quarter, his grades improved to 9's and 10's, except for an 8 in music. (Tr. 56:22-57:8; Trial Ex. 4). The comments for report cards indicate that RS did well behaviorally and had good relationships with his classmates. (Trial Ex. 7). In the third and fourth grades, RS continued to achieve mostly 9's and 10's. (Tr. 58:6-22, Trial Exs. 5,6.) AS's Italian teachers said that AS was very active, well integrated, had friends, and seemed settled in Italy. (Tr. 142:16-22.)

In Italy the children had friends with whom they played, and they attended birthday parties and other social activities with friends. (Dkt. 45 (Undisputed Fact No. 16).) The children enjoyed a normal life with social activities with their friends, family, and relatives in Italy, as they attended

birthday parties, holiday meals and parties, trips to the beach and mountains, camping, playing at the park, and attending carnivals. (Tr. 59:20-67:18; Trial Exs. 24-41.) These activities continued after Dervishi returned to California in December 2019. (Tr. 65:18-67:12.) AS and RS have a large extended family in Italy, including cousins their age, with whom they socialized. (Tr. 70:15-23.) The children were involved in coding classes, chess, ballet, Judo, and swimming. (Dkt. 45 (Undisputed Fact No. 16).)

**D. Medical Treatment in Italy.**

AS and RS had regular medical appointments in Italy, including visits to the pediatrician, nutritionist, and vision specialist. (Tr. 71:4-72:16, Trial Ex. 53-61.) They were current on their vaccinations and were enrolled in the Italian health system. (Tr. 71:4-72:16, Trial Ex. 53-61.)

**E. Travel to United States between 2016 and 2018.**

During their time in Italy, the children visited California once – for two weeks in 2018. (Dkt. 45 (Undisputed Fact No. 17).) Between 2016 and 2018, Dervishi went back to California five or six times. (Dkt. 45 (Undisputed Fact No. 17).) Sacchi never returned to California after his move to Italy in 2016. (Dkt. 45 (Undisputed Fact No. 17).)

**F. Discussions about Return to California in 2018 and Early 2019.**

In Italy, Dervishi and Sacchi had continuing marital problems. (Tr. 73:9-16.) Dervishi told Sacchi that she wanted to move back to California, but they never discussed returning as a couple. (Tr. 73: 17-74: 1.) Dervishi asked if Sacchi would let the children move back to California with her. (Tr. 74: 4-75:4.) When Dervishi travelled to California in October 2018, Sacchi was aware that she went to look for a job and that she wanted to move there with the children. (Tr. 183:7-184:8.) Sacchi told Dervishi that they could discuss what is best for the children once Dervishi was settled in California, but he never said the children could move back and only told her that they would discuss the issue. (Tr. 73:17-75:4; Tr. 187:9-188:3.)

There is no written documentation regarding any agreement between the parties about the children moving to California. (Tr. 248:5-13.) Dervishi later realized that Sacchi was never going to be satisfied with her being settled and that he was very vague about the conditions under which the children could move there with her. (Tr. 211:10-15.)

**G. Dervishi's Move to California in December 2018.**

On December 2, 2018, Dervishi returned to California alone. (Dkt. 45 (Undisputed Fact No. 18).) After Dervishi returned to California, the children remained living with Sacchi in Milan, Italy. (Dkt. 45 (Undisputed Fact No. 20).) After her move to California in December 2018, Dervishi continued to ask if the children could come and live in California with her, but Sacchi always responded that they would discuss it once she had a stable life there and was settled. (Tr. 75:6-24.) Dervishi said she would not have left Italy if she did not think she could bring the children to live with her after she got settled. (Tr. 210:19-23; Tr. 226:24-25; Tr. 227:18-20; Tr. 230:22-231:2.) Dervishi testified that Sacchi told Dervishi that he would not object to her having the children live with her in California once she was settled. (Tr. 210:24-211:3; Tr. 232:14-21.) She testified that, when she moved to California, she thought that she and Sacchi had an agreement that the children could live with her in California once she was settled. (Tr. 230:22-231:2.)

Dervishi thought what being settled meant was clear, but Dervishi and Sacchi did not discuss the details. (Tr. 211:22-212:9.) Sacchi was not specific on what it would mean for her to be settled, and Dervishi later realized that it "was a moving goalpost." (Tr. 211:1-15; Tr/ 284: 20-24.) Sacchi would never consider her to fulfill what it meant to be settled to him: "I realized I was never going to reach the ready stage. There was always going to be one condition that I didn't meet. (Tr. 284:22-24.)

**H. January 2019.**

In January 2019, Dervishi flew from California to Italy and visited the children in Milan for four days. (Dkt. 45 (Undisputed Fact No. 22).) Again, she asked to take the children back to California, and Sacchi did not agree. (Tr. 75: 25-76:15.) Dervishi testified that she did not speak with Sacchi in January and said: "communication wasn't our thing." (Tr. 219:19-21.)

Dervishi took a job as a personal trainer in a gym in California and told Sacchi about her job. (Tr. 77: 4-11.) Dervishi is still employed as a personal trainer at the Equinox Health Club in San Ramon, California. (Dkt. 45 (Undisputed Fact No. 19).)

/ / /

**I. March 2019.**

In March 2019, Dervishi signed a one-year lease for a one-bedroom apartment in San Ramon, California. (Dkt. 45 (Undisputed Fact No. 25).) Sacchi learned about the apartment from the children. (Tr. 76:16-77:3.) Sacchi overheard a Facetime call between Dervishi and the children and learned that the apartment was unfurnished, except for a bed. (Tr. 76:16-77:25.) During one argument, Sacchi asked Dervishi how she thought she was ready to have the children live with her when the apartment was empty. (Tr. 194:6-20.) Dervishi responded she wanted to wait for the children to select the furniture. (Tr. 194:6-20; Tr. 222:11-23.) Dervishi put the children on the lease as occupants but did not tell Sacchi that she did that. (Tr. 249:4-8.)

Once she rented an apartment, Dervishi started telling the children during their Facetime calls that she would take them back to California. (Tr. 78: 1-21.) She never discussed that with Sacchi; however, Sacchi overheard some of the calls. (Tr. 78:9-21.) Sacchi asked Dervishi to stop discussing that with the children. (Tr. 78: 9-79: 3.) After the children were asleep, he told her that they should come to a decision before telling the children they were moving. (Tr. 78:15-21.) AS told her teacher she was moving to California. (Tr. 79:4-9.) Sacchi eventually told the children that no decision had been made about whether they would move. (Tr. 79:13-23.)

Upon Dervishi's request, Sacchi sent Dervishi the children's Social Security numbers and birth certificates. (Tr. 80:25-81:23; Dkt. 45 (Undisputed Fact No. 26).) Sacchi testified that he was not exactly clear on why she needed them other than that the human resources department at her new job was asking for that information for benefits. (Tr. 81:4-82:11.) Dervishi testified that she did not specifically tell Sacchi that she was putting the children on her employment benefits but that she discussed with him what benefits the children needed. (Tr. 214:2-11; Tr. 250: 11-21.)

**J. April 2019.**

Dervishi stated in her responsive declaration to Sacchi's Hague Petition that the two of them were arguing in April and May about whether the children could move back to California and that Sacchi claimed he never agreed to the children moving. (Trial Ex. 91, ¶ 8.) She testified that in April, Sacchi was still reviewing whether she was settled and told her that her apartment was too small. (Tr. 251:18-23.)

On April 17, 2019, Sacchi filed a divorce proceeding in Milan, Italy, and in that proceeding's written documents, Sacchi requested custody of the children with prevalent placement and placement at Sacchi's home. (Dkt. 45 (Undisputed Fact No. 32).) At the time Sacchi filed his dissolution proceeding in Italy, the children had been residing in Italy continuously for more than two years and nine months. (Dkt. 45 (Undisputed Fact No. 32).)

Dervishi enrolled the children in school in California without Sacchi 's knowledge or consent; Dervishi told Sacchi about it after the fact. (Dkt. 45 (Undisputed Fact No. 27); Tr. 249:9-11.) When Sacchi found out, he told Dervishi that he had filed for divorce in Italy, so "it was not possible" for the children to attend school in California. (Tr. 82:12-83:5.) As Sacchi explained it, after he filed for divorce, their conversations "took a different path" and he told her that the children could not live with her in California. (Tr. 194:21-195:6.) At one point Sacchi said to Dervishi that she wasn't ready to have the children and she should wait another year when she would be more settled. (Tr. 195:7-196:15; Tr. 251:6-10.)

**K. Parties' Discussions about Children's Trip to California.**

Sacchi agreed that the children would spend a month with Dervishi in California during the children's summer vacation from school. (Dkt. 45 (Undisputed Fact No. 24).) Specifically, he agreed that the children would fly from Italy to California on June 15, 2019 and fly back to Italy July 18, 2019. (Dkt. 45 (Undisputed Fact No. 24).) Sacchi told Dervishi that the children could go to California for only one month for vacation. (Tr. 79:24-80:12; Tr. 225:7-9.) Dervishi also testified that Sacchi said the children could only go to California for one month. (Tr. 225:2-9.) Sacchi did not agree to a permanent move. (Tr. 75:25-76:15; Tr. 251:15-17; Tr. 242:15-243:20; Trial Ex. 91, ¶ 8.) The parties also agreed that Dervishi would accompany the children on both of the flights for that trip. (Dkt. 45 (Undisputed Fact No.24).)

**L. Trip to California.**

On May 23, 2019, Dervishi purchased round-trip airline tickets for her and the children to fly to California on June 15, 2019 and return to Italy on July 18, 2019. (Dkt. 45 (Undisputed Fact No. 28).) Dervishi provided Sacchi with a copy of the itinerary. (Trial Ex. 1.) Those tickets show a departure date for Dervishi, AS, and RS on June 15, 2019, from Milan, Italy to San Francisco,

United States District Court
Northern District of California

California, and a return date of July 18, 2019, from San Francisco, California to Milan, Italy. (Trial Ex. 1.)

Dervishi testified at trial that the reason she purchased round-trip tickets for the children was that they were around the same price as round-trip tickets, but she never actually checked the two prices. (Tr. 245:16-246: 4.) She also testified that she wanted to give the children an option of returning to Italy if they did not want to stay with her in California. (Tr. 225:12-25.)

On or about June 14, 2019, Dervishi traveled to Italy to pick the children up. (Dkt. 45 (Undisputed Fact No. 29).) Dervishi understood that Sacchi did not agree to the children's moving to live with her when she flew back with them to California. (Tr. 239:22-240:6; Tr. 252:15-18 ("Q: So when you decided to keep the children in California, that was without Mr. Sacchi's consent; isn't that correct? A: Yes, that's correct.").) When Dervishi took the children to California, she did not tell Sacchi that they would not return to Italy after their trip to California in the summer of 2019. (Tr. 244:3-5.)

The children took only one suitcase each, containing just what they needed for a month-long vacation. All their other clothing and possessions remain at their home in Italy. (Dkt. 45 (Undisputed Fact No. 29).) Dervishi packed their suitcases. (Dkt. 45 (Undisputed Fact No. 29).) Dervishi testified that, when she packed the children's clothes for the trip to California in June 2019, she took only summer clothes because children outgrow clothing in a few months and because clothes are cheap, and, thus, they did not need their fall and winter clothes. (246:16-23.) Dervishi also packed their homework books and told Sacchi that the children would work on their Italian homework while they were in California. (Tr. 85:5-19.) Sacchi took pictures of the children's bedroom in Italy after they left, depicting their personal items including their books, their laptop computers, their backpacks, and their clothing. (Tr. 86:8-89:12; Trial Exs. 79-89.) Although Sacchi took those pictures approximately one week before the trial in June 2020, he testified that they were accurate depictions of how their bedroom looked when the children left in June 2019. (Tr. 86:21-24.)

The children were enrolled automatically in school in Italy for the next school year, starting in September 2019. (Tr. 95:2-8.) On June 9, 2019, Sacchi ordered the children's

homework books for the summer and for the next school year. (Tr. 95:9-23; Trial Exs. 8-11.) Sacchi had scheduled a month-long vacation from work in the summer to take the children to Venice, Rome, and Vatican City after they returned from California, and he had reserved a house on the beach for a week and planned a trip to visit his uncle's house in the mountains with the children. (Tr. 96:10-97:6.) Sacchi had a full month of authorized leave from work for vacation with the children. (Tr. 97:2-6.) Sacchi also had scheduled medical appointments for the children in the summer after their planned return from California. When Dervishi refused to return the children to Italy, Sacchi had to cancel the children's doctors' appointments, which were scheduled in Milan for July 24, 25, 26 and 29, 2019. (Tr. 97:7-98:12; Trial Exs. 12-16.)

When the children were in California, they told Dervishi that they wanted to stay there. (227: 4-6.)[1] In July 2019, Dervishi refused to return the children to Italy. (Dkt. 45 (Undisputed Fact No. 30).) Two days before the scheduled date of return, Sacchi discovered that Dervishi did not intend to return the children. (Tr. 89:19-23.) After Dervishi served him with divorce papers, she told him that she did not intend to return the children to Italy. (Tr. 89:19-90:2.) Sacchi demanded that she return the children. (Tr. 92:8-10.) On July 23, 2019, just four days after Dervishi refused to return the children, Sacchi filed applications with the Ministry of Justice in Italy to start the Hague proceedings to return the children to Italy. (Tr. 92:14-95:1; Trial Exs. 19, 20.)

In a text conversation on July 31, 2019, Sacchi accused Dervishi of kidnapping their children. (Trial Exs. 21, 62.) He also wrote: "You're holding the children illegally. Don't think I'm just sitting here quietly, do you?" (Trial Ex. 21.) Dervishi responded: "You made me realize I was out of options. You made me feel hopeless." (Trial Ex. 21.)

---

[1] Dervishi concedes now, after trial, that the habitual residence of the children was Italy as of June 2019. Therefore, the preference that the children expressed is no longer an issue in this case. However, because this preference was an issue at the time of trial, Margaret Lee, Ph.D., testified as an expert, and the parties stipulated to the admission of her written report into evidence. Lee opined that, that, although the children have expressed a desire or preference to remain in California with their mother, they "lack the maturity to render an opinion that should carry much weight in this matter, nor have they formed a mature articulated objection." (Trial Ex. 92 at p. 27.) In addition, Lee opined that Dervishi has "unduly influenced the children and that their opinions are not reflections of independent thinking." (Trial Ex. 92 at p. 28.)

United States District Court
Northern District of California

**M. Dervishi's Dissolution Filing in California.**

On July 1, 2019, Dervishi filed a *Summons* and *Petition for Dissolution of Marriage* in the Contra Costa County Superior Court in California. (Dkt. 45 (Undisputed Fact No. 33).) In her *Petition*, Dervishi requested, among other things, sole legal and physical custody of the children. (Dkt. 45 (Undisputed Fact No. 33).) In the *Declaration Under Uniform Child Custody Jurisdiction and Enforcement Act (UCCJEA)* ("UCCJEA Declaration") which Dervishi filed with her *Petition*, she confirmed that the children had resided in Milan, Italy from July 2016 until she took them to the United States this past summer. (Dkt. 45 (Undisputed Fact No. 33).)

## CONCLUSIONS OF LAW

This Court has jurisdiction over actions brought under the Hague Convention. *See* 22 U.S.C. § 9003(a).[2] The Convention "was adopted in 1980 in response to the problem of international child abductions during domestic disputes [and] . . . seeks to secure the prompt return of children wrongfully removed to or retained in any Contracting State." *Abbott v. Abbott*, 560 U.S. 1, 8 (2010) (quotation omitted). "The Convention's central operating feature is the return remedy. When a child under the age of 16 has been wrongfully removed or retained, the country to which the child has been brought must order the return of the child forthwith, unless certain exceptions apply." *Id.* (quotation omitted).

"[T]he Hague Convention analysis is not a determination of custody rights." *Shalit v. Coppe*, 182 F.3d 1124, 1128 (9th Cir. 1999). "A court that receives a petition under the Hague Convention may not resolve the question of who, as between the parents, is best suited to have custody of the child. With a few narrow exceptions, the court must return the abducted child to its country of habitual residence so that the courts of that country can determine custody." *Cuellar v. Joyce*, 596 F.3d 505, 508 (9th Cir. 2010)

A petitioner seeking return of a child under the Convention must prove by a preponderance of the evidence that the child "was wrongfully removed or retained" within the meaning of the Convention. *See* 22 U.S.C. § 9003(e)(1)(A). Once a petitioner has shown that removal was wrongful, "the burden shifts to the respondent to establish that one of the exceptions in the

[2] The parties consented to the jurisdiction of the undersigned. (Dkts. 10, 14.)

Convention 'excuses return' of the child." *Padilla v. Troxell*, 850 F.3d 168, 175 (4th Cir. 2017) (citing *Lozano v. Montoya Alvarez*, 134 S. Ct. 1224, 1229 (2014)). "These exceptions are limited and narrow." *Id*. Here, Sacchi asserts the exception that a court "is not bound to order the return of the child," if, at the time of removal, the petitioning parent either "consented to" or "subsequently acquiesced in the removal or retention" of the child. *See* Hague Convention art. 13a, 19 I.L.M. at 1502. The respondent bears the burden of establishing consent or acquiescence by a preponderance of the evidence. *See* 22 U.S.C. § 9003(e)(2)(B).

As the Ninth Circuit found in in *Gonzalez-Cabellero*, "[t]his case is tragic – we have two parents who both appear to love and cherish their [children]." *Gonzalez-Caballero v. Mena*, 251 F.3d 789, 795 (9th Cir. 2001). The parents here currently live on two different continents. Whether the Court finds for Sacchi or Dervishi, the children will be with only one of their parents a continent away from the other while the ultimate custody determination is pending. Nevertheless, the Court must constrain itself to the narrow issue raised by the Petition – whether Dervishi must return the children under the Hague Convention.

**A. Exercise of Custodial Rights.**

The Court finds that Sacchi and Dervishi, as the married parents of AS and RS, shared custodial rights as of June 2019, under Italian law. Dervishi "confirms" that Sacchi was exercising his rights of custody when the children moved to California. (Dkt. 53.)

Sacchi moved for judicial notice of an Italian statute that provides that a father in a relationship of marriage with the mother of his children has custodial rights. (Dkt. 48.) The Court takes judicial notice of that statute, Article 316 of the Italian Civil Code. That statute states (in translation):

> Both parents have parental responsibility which is exercised by mutual agreement taking into account the child's abilities, natural inclinations and aspirations. By mutual agreement, the parents establish the habitual residence of the minor. In the event of a dispute on matters of particular importance, each of the parents can appeal to the judge without formalities, indicating the measures they deem most suitable. The judge, having heard the parents and willing to listen to the minor child who has reached the age of twelve and also of an inferior age where capable of discernment, suggests the determinations that he deems most useful in the interest of the child

> and the family unit. If the dispute persists, the judge attributes the power of decision to that of the parents who, in the individual case, deems the most suitable to take care of the child's interest. The parent who recognized the child exercises parental responsibility over him. If the recognition of the child, born out of wedlock, is done by the parents, the exercise of parental responsibility belongs to both. The parent who does not exercise parental responsibility supervises the education, upbringing and living conditions of the child.

(Dkt. 48.) Dervishi did not object to the request for judicial notice.

**B. Habitual Residence of Children in Italy.**

The Court finds that the habitual residence of the children was Italy at the time that Dervishi removed them to the United States in June 2019. Although Dervishi initially contested this issue, after trial Dervishi submitted a written brief in which she "concedes the habitual residence of the children is in Italy." (Dkt. 53.) By June 2019, the children had been living in Italy for almost three years and had attended three years of school in Italy. The children were fluent in Italian and English, and they participated in many extracurricular activities. They had friends and an extended family in Italy whom they saw on a regular basis. Although the children were born in the United States and had spent the first years of their lives in the United States, by June 2019, they were acclimated to Italy.

**C. Consent or Acquiescence.**

Dervishi argues that Sacchi consented to the children moving from Italy to California and later acquiesced to the move for a period of six months. (Dkt. No. 53 at p. 2.) Consent and acquiescence are two separate and "analytically distinct" affirmative defenses. *Padilla*, 850 F.3d at 175 (quoting *Baxter v. Baxter*, 423 F.3d 363, 371 (3d Cir. 2005) and citing *Darin v. Olivero-Huffman*, 746 F.3d 1, 14 (1st Cir. 2014)). The defense of consent "concerns the petitioner's conduct before the contested removal or retention" and acquiescence "concerns whether the petitioner subsequently agreed to or accepted the removal or retention." *Id*. To establish consent, courts "focus on the parties' conduct *prior* to the removal or retention." *Id*. at 176 (emphasis in original). However, "conduct after removal can be useful in determining whether consent was present at the time of removal." *Gonzalez-Caballero*, 251 F.3d at 794.

"For both the consent and acquiescence defenses, the inquiry turns on the petitioner's

subjective intent." *Padilla*, 850 F.3d at 176. The defense of consent requires less formality than the defense of acquiescence. *Id*. at 175-76. "[A] petitioner's statement or conduct – formal or informal – can manifest consent." *Id*.; *see also Larbi v. Larbie*, 690 F.3d 295, 308 (5th Cir. 2012) ("The focus of inquiry is the petitioner's subjective intent . . . as evinced by the petitioner's statements or conduct, which can be rather informal.") (internal quotation marks and citations omitted). In contrast, to show acquiescence, courts "look to evidence such as testimony in a judicial proceeding, a convincing renunciation of rights, or a consistent attitude over a significant period of time." *Padilla*, 850 F.3d at 176.

In examining a consent defense, courts must:

> consider what the petitioner actually contemplated and agreed to in allowing the child to travel outside its home country. The nature and scope of the petitioner's consent, and any conditions or limitations, should be taken into account. The fact that a petitioner initially allows children to travel, and knows their location and how to contact them, does not necessarily constitute consent to removal or retention under the Convention.

*Baxter*, 423 F.3d at 371. The inquiry is "fact-intensive" and depends upon the Court's "factual and credibility determinations." *Padilla*, 850 F.3d at 176.

Here, the evidence clearly shows that in June 2019, when Dervishi took the children to California, Sacchi only agreed that Dervishi could keep the children for a one-month vacation. He did not consent to the children living in California indefinitely. Both Sacchi and Dervishi repeatedly testified to this fact at trial. The parties even stipulated to this fact: "Petitioner agreed that the children would spend a month with Respondent in California during the children's summer vacation from school. Specifically, he agreed that the children would fly from Italy to California on June15, 2019 and fly back to Italy July 18, 2019." (Dkt. 45 (Undisputed Fact No. 24).) Dervishi bought round-trip tickets for a month-long trip and provided copies to Sacchi, and those actions underscore the agreement that the children would stay in California for only a month. Additionally, the evidence that Dervishi only packed enough clothing for the children for a month-long summer vacation, left most of the children's personal belongings in their bedroom in Italy, including their laptop computers and backpacks, and took their Italian homework to California confirms that she understood, at that time, that Sacchi did not agree to her taking the children to

United States District Court
Northern District of California

California permanently. Moreover, Sacchi's conduct after Dervishi refused to return the children further confirms his lack of consent at the time of removal. Notably, he accused her of kidnapping and illegally holding the children and filed his Hague applications for the return of the children within days of discovering that Dervishi was not returning them.

Dervishi seeks to avoid these facts by arguing that she and Sacchi had an earlier agreement that the children could live with her once she was settled. Although Dervishi does not specify when this purported agreement existed, it appears as though Dervishi contends they made this agreement when she first moved to California in January 2019. However, the evidence shows that, although Sacchi showed he was willing to consider and discuss a move for the children to California, there was not a time where Sacchi actually agreed to the move. Dervishi even testified that the conditions for allowing a move were a "moving goalpost." Dervishi thought that the children's move to California would occur eventually and testified that she would not have left Italy if she did not think that the children would be able to join her. But her subjective intent does not show that Sacchi agreed with her. More significantly, even if Sacchi at one point did agree that the children could move to California, he did not agree to their removal and her retention when Dervishi took the children to California. By the time Dervishi flew with the children to California in the summer of 2019, Sacchi withdrew any consent he may have provided at an earlier time.

The key inquiry is whether Sacchi consented to Dervishi's removal and retention of the children *at the time of removal*. *See Darin*, 746 F.3d at 16 (finding that respondent failed to demonstrate consent because at the time of removal, petitioner did not consent); *see also In re A.L.C.*, 16 F. Supp. 3d 1075, 1090-91 (C.D. Cal. 2014) (noting that discussions about moving were distinct from actually consenting to the move at the time of the removal), *vacated in part on other grounds by* 783 F.3d 763 (9th Cir. 2015); *Asumadu v. Baffoe*, 2018 WL 3957696, at *4 (D. Ariz. Aug. 17, 2018) ("the Court's analysis focuses on the petitioner's subjective intent at the time of the removal or retention"); *Khalip v. Khalip*, 2011 WL 1882514 (E.D. Mich. May 17, 2011) (same).

In *Khalip*, the petitioner signed a notarized application consenting to the respondent

permanently moving with the children. However, before the respondent actually removed the children, the petitioner signed another notarized application, revoking his consent. *Khalip*, 2011 WL 1882514 at *2. Because the petitioner revoked his consent before removal, the court found that the respondent failed to demonstrate consent. *Id*., 2011 WL 1882514 at *6. Similarly here, because it is clear that, at the time of removal, Sacchi did not agree to the children's move to California indefinitely, Dervishi fails to demonstrate her defense of consent by a preponderance of the evidence.

Nor does Dervishi demonstrate acquiescence. Dervishi argues that Sacchi acquiesced for six months after Dervishi moved to California (between December 2018 and June 2019) and that she made efforts to get settled enough to have the children live with her. However, the defense of acquiescence concerns a petitioner's subjective intent *after* the removal or retention. *Padilla*, 850 F.3d at 176. At most, Dervishi points to Sacchi's behavior *before* she removed the children. Additionally, "the defense of acquiescence has been held to require 'an act or statement with the requisite formality, such as testimony in a judicial proceeding; a convincing written renunciation of rights; or a consistent attitude of acquiescence over a significant period of time.'" *Baxter*, 423 F.3d at 371 (quoting *Friedrich v. Friedrich*, 78 F.3d 1060, 1070 (6th Cir. 1996)). Here, there is no evidence – no testimony or exhibits – to show that Sacchi changed his mind and acquiesced after Dervishi took the children to California. To the contrary, as discussed above, Sacchi accused Dervishi of kidnapping and illegally holding the children and affirmatively took immediate steps to secure the children's return. Only four days after Dervishi was supposed but failed to bring the children back to Italy, Sacchi filed his Hague applications for the return of the children.

Under these circumstances, the Court finds that Dervishi has failed to meet her burden to show the narrow exception of consent and acquiescence and, thus, grants Sacchi's Petition.

**CONCLUSION**

For the foregoing reasons, the Court HEREBY GRANTS Sacchi's Petition for the return of the children. If travel is allowed due to COVID-19 (Coronavirus Disease), Dervishi shall return the children to Milan, Italy within fourteen days of this Order. If Italy is not allowing flights in from the United States, Dervishi shall return the children within fourteen days of any travel

United States District Court
Northern District of California

restrictions being lifted. Additionally, Sacchi may file a motion pursuant to 22 U.S.C. § 9007(b)(3), to recoup the fees and costs that he incurred to bring this petition, within 14 days of this order. The Court will issue a separate judgment in favor of Sacchi. The Clerk is instructed to close the file.

**IT IS SO ORDERED**.

Dated: July 2, 2020

SALLIE KIM
United States Magistrate Judge